**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 19-cv-02611-CMA-NYW

STRATUS REDTAIL RANCH LLC,

     Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, and
WWD LIMITED LIABILITY COMPANY, *a/k/a* WWD, LLC,

     Defendants.

---

**ORDER AFFIRMING AND ADOPTING RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE**

---

     This matter is before the Court on the March 24, 2020 Recommendation of

United States Magistrate Judge (Doc. # 55), wherein Magistrate Judge Nina Y. Wang

recommends this Court grant Defendants International Business Machines Corporation

("IBM") and WWD Limited Liability Company's ("WWD") (collectively, "Defendants")

Motion to Dismiss Stratus's First Claim for Relief for CERCLA Recovery Under Section

107(a) ("the Motion") (Doc. # 28). Plaintiff timely objected to the Recommendation. For

the reasons that follow, the Court overrules Plaintiff's objections and affirms and adopts

the Recommendation.

## I.    <u>BACKGROUND</u>

     Judge Wang described the factual background of this case in the

Recommendation (Doc. # 55 at 2–4), which is incorporated herein by reference. *See* 28

U.S.C. § 636(b)(1)(B) (2018); Fed. R. Civ. P. 72(b). The Court therefore recounts only the facts[1] necessary to address Plaintiff's objections to the Recommendation.

Plaintiff, Stratus Redtail Ranch LLC ("Stratus" or "Plaintiff"), purchased a 290-acre parcel of land near Erie, Colorado ("the Property") from WWD for potential development on or about July 15, 2015. (Doc. # 1 at 1–2, 4.) Prior to purchasing the Property, Plaintiff commissioned a Phase 1 Environmental Site Assessment pursuant to American Society for Testing and Materials ("ASTM") standards, which indicated that no recognized environmental conditions existed on the Property and no hazardous waste or environmental contamination was present. (*Id.* at 4–5.) Unbeknownst to Plaintiff at the time of the purchase, situated within the Property at some point was the Neuhauser Landfill, which released hazardous substances into the surrounding soil and shallow ground water. *See* (*id.* at 1–2, 4–5, 12). Plaintiff alleges that it was an "innocent landowner" ("ILO," as defined in CERCLA Section 101(35) and 107(b)(3)) and/or a "bona fide prospective purchaser" ("BFPP," as defined in CERCLA Sections 101(40) and 107(r)). (*Id.* at 2.)

"In early 2017 and after confirming the presence of hazardous waste" on the Property, the Colorado Department of Public Health and Environment ("CDPHE") and the Environmental Protection Agency ("EPA") "stated their intentions to initiate legal proceedings against Stratus for the remediation of the Neuhauser Landfill." (*Id.* at 12.)

---

[1] This Court draws the following facts from the Complaint and the attachments to Defendants' Motion to Dismiss and presumes they are true for purposes of the instant Motion. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)) (in deciding a Rule 12(b)(6) motion, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.")

Thereafter, Stratus entered into an Administrative Settlement Agreement and Order on Consent for Removal Action ("AOC") with the EPA and a Compliance Order on Consent ("COC") with the CDPHE (collectively, the "Consent Orders"). *See* (*id.* at 2, 12–13); *see also* (Doc. ## 28-1, 28-2). Stratus entered into the Consent Orders "[g]iven the likelihood that [it] would be confronted with substantial litigation costs and/or much higher remediation costs if such governmental agencies conducted" clean-up efforts instead of Stratus. (Doc. # 1 at 12.) Stratus has since "resolved its liability to EPA for matters covered in the AOC" and "has actually incurred in excess of $4,000,000.00 in . . . environmental response, remediation[,] and cleanup costs," with the expectation that it will incur an additional $3.5 million in clean-up costs through 2021. *See* (*id.* at 2–3, 12–15, 19). "All of Stratus' actual and anticipated investigative costs, remedial costs and costs of long-term monitoring and maintenance . . . have been, or will be, incurred pursuant to the Consent Orders . . . ." (*Id.* at 3.)

Plaintiff alleges that Defendants IBM and WWD both owned, operated, and/or arranged disposal of hazardous substances at the Neuhauser Landfill prior to Plaintiff's purchase of the Property and are "potentially responsible parties" for some or all contamination. *See* (*id.* at 5–12). "Stratus has demanded payment from IBM and WWD" for costs incurred and future expenditures to no avail. *See* (*id.* at 15). As a result, Stratus initiated this action against Defendants on September 12, 2019. *See* (Doc. # 1). It asserts the following three claims for relief pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*: (1) recovery of all costs of removal and remediation pursuant to §

107(a), 42 U.S.C. §§ 9607(a)(1)-(4), ("Claim 1" or "cost recovery claim"); (2) contribution for some or all costs incurred and associated with Stratus's remediation efforts under the Consent Orders pursuant to § 113(f), 42 U.S.C. §§ 9613(f)(1), (3)(B), ("Claim 2" or "contribution claim"); and (3) a declaration of Defendants' liability pursuant to § 113(g)(2), 42 U.S.C. § 9613(g)(2), ("Claim 3"). *See generally* (*id.*).

On November 12, 2019, Defendants jointly filed the instant Motion to Dismiss, wherein they argue that the Court should dismiss Claim 1 because Stratus's claims arise from costs incurred pursuant to the Consent Orders and, thus, Section 113(f) provides Plaintiff's exclusive avenue for relief under CERCLA. *See* (Doc. # 28 at 2). Plaintiff opposes the Motion to Dismiss, arguing it sufficiently pleads it was an innocent landowner ("ILO") and/or a bona fide prospective purchaser ("BFPP") under CERCLA, and therefore, may proceed under Sections 107(a) and 113(f) for the same recovery costs. *See* (Doc. # 33 at 1–2). Defendants replied (Doc. # 35), and Plaintiff received leave to file a sur-reply (Doc. # 50). Judge Wang heard oral argument on the Motion on February 19, 2020. *See* (Doc. ## 53–54). On March 24, 2020, Judge Wang issued her Recommendation, in which she recommends that this Court grant the Motion. *See generally* (Doc. # 55). Plaintiff objected to the Recommendation on April 21, 2020 ("Objection").[2] (Doc. # 62.) Defendants filed a response (Doc. # 64), and Judge Wang granted Plaintiff leave to file a reply (Doc. # 71).

---

[2] In its Objection, Plaintiff requests oral argument on the Motion. The Court finds that oral argument would not materially assist in its determination of the Motion, so Plaintiff's request for oral argument is denied.

## II.   LEGAL STANDARDS

### A.   REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a subsequent motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausible" means that the plaintiff pled factual content which allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim

for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [the] plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). A court need not accept conclusory allegations without supporting factual averments, however. *Southern Disposal, Inc. v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.   DISCUSSION

Two questions are at issue in the instant Motion to Dismiss: (1) whether a plaintiff that incurred costs pursuant to an administrative settlement agreement may simultaneously bring CERCLA claims for contribution pursuant to Section 113 and cost recovery pursuant to Section 107; and (2) whether a potentially responsible party's ("PRP") ILO/BFPP defense has any impact on its ability to bring both claims. With respect to the first question, Judge Wang reached the same conclusion as every circuit court of appeals to address the issue since *Atlantic Research*, 551 U.S. 128 (2007), in finding that Plaintiff is limited to a Section 113 claim because it incurred costs pursuant to an administrative settlement agreement. As to the second question, Judge Wang concluded that the ILO/BFPP defense does not impact Plaintiff's ability to maintain a Section 107 claim under the circumstances.

Plaintiff objects to the Recommendation on three grounds. First, Plaintiff argues that Judge Wang incorrectly concluded that a plaintiff may not assert claims under both Sections 107 and 113 by misapplying *Atlantic Research*, 551 U.S. 128 (2007), by relying on an out-of-circuit weight of authority that is purportedly inapposite to the instant case, and by declining to follow *Mathews v. Dow Chem. Co.*, 947 F. Supp. 1517 (D. Colo. 1996), and *Morrison Enters. v. McShares, Inc.,* 302 F.3d 1127, 1133 (10th Cir. 2002). (Doc. # 62 at 2.) Second, Plaintiff asserts that the Recommendation "ignores Stratus' status as an ILO/BFPP plaintiff, and that such status entitles Stratus rightfully to assert its claim for relief under §107." (*Id.*) Third, Plaintiff argues that it has stated a claim under Section 107 for costs it has incurred outside of the scope of the Consent Orders. (*Id.* at 14–15.) For the reasons that follow, the Court agrees with Judge Wang's conclusions that Plaintiff is limited to a contribution claim under Section 113, that Plaintiff's alleged ILO/BFPP status is not relevant to the inquiry of what claims Plaintiff may bring under CERCLA, and that Plaintiff has failed to state a claim for costs that fall outside of the scope of Section 113.

## A.   CERCLA BACKGROUND

"Congress enacted CERCLA in 1980 to 'promote the timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.'" *CTS Corp. v. Waldburger,* 573 U.S. 1, 4 (2014) (internal quotation marks omitted) (quoting *Burlington N. & Santa Fe R.Co. v. United States,* 556 U.S. 599, 602 (2009)). Two provisions of CERCLA—§§ 107(a) and 113(f)—allow private parties to recover expenses associated with cleaning up

contaminated sites. 42 U.S.C. §§ 9607(a), 9613(f); *Atlantic Research*, 551 U.S. at 131.

Plaintiff asserts both claims against Defendants.

Under Section 107, "CERCLA imposes strict liability for environmental

contamination upon four broad classes of PRPs ['Potentially Responsible Parties'],"

which include, in relevant part, "(1) the owner and operator of a vessel or a facility."

*Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608 (2009) (citing 42

U.S.C. § 9607(a)). Under Section 107, PRPs "shall be liable for," in part, "(A) all costs of

removal or remedial action incurred by the United States Government or a State or an

Indian tribe not inconsistent with the national contingency plan" and "(B) any other

necessary costs of response incurred by any other person[3] consistent with the national

contingency plan . . . ." 42 U.S.C. § 9607. Section 107(b) lists defenses to liability under

107(a) "for a person otherwise liable" who can establish one or more of the following by

a preponderance of the evidence: that the contamination was caused by an act of God,

an act of war, or "an act or omission of a third party other than an employee or agent of

the defendant" or a third party "whose act or omission occurs in connection with a

contractual relationship" with the defendant. 42 U.S.C. § 9607. Put differently, there is a

defense to liability for innocent landowners. *See Niagara Mohawk Power Corp. v.

Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) (citation omitted).

"As originally passed, 'CERCLA contained no provision expressly providing for a

right of action for contribution;' in fact, it made no mention of 'contribution' at all." *Gov't

of Guam v. United States*, 950 F.3d 104, 108 (D.C. Cir. 2020) (quoting *Cooper*

---

[3] The Supreme Court has interpreted "any other person" in subparagraph B to provide a cause of action to anyone except the persons listed in subparagraph A—i.e., anyone other than the United States, a State, or an Indian tribe. *Atlantic Research*, 551 U.S. at 135.

*Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 161 (2004)). "Congress addressed this gap in the statutory scheme when it amended CERCLA through the Superfund Amendments and Reauthorization Act of 1986 ['SARA'], Pub. L. 99–499, 100 Stat. 1613. Specifically, it added a new section to the Act—section 113—which 'provide[d] two express avenues for contribution.'" *Id.* Section 113(f) "authorizes one [PRP] to sue another for contribution in certain circumstances." *Atlantic Research,* 551 U.S. at 132. Relevant to this case, Section 113(f)(3)(B) grants a right of contribution to a PRP "who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement . . . ." 42 U.S.C. § 9613(f)(3)(B).[4]

As an incentive for PRPs to settle their liability with enforcement authorities, parties who have reached such a settlement are immune from liability for contribution regarding matters addressed in the settlement. 42 U.S.C. § 9613(f)(2). On the other hand, the right to contribution under Section 113(f) is more limited than the right to recover costs under 107(a); "A person seeking contribution under § 113(f) may be subject to the equitable allocation of response costs, *see* § 113(f)(1), and may not recover from previously settling parties, *see* § 113(f)(2). Such claims are also subordinate to the rights of the United States or a State, *see* § 113(f)(3)(C), and subject to a shorter limitation period than cost-recovery claims, *see* § 113(g)(2)-(3)." *Morrison Enters. v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011).

---

[4] It is undisputed that the Consent Orders in this case are administrative settlements within the meaning of Section 113(f)(3)(B). *See* (Doc. # 1 at 18–19); (Doc. # 28 at 11–14); (Doc. # 55 at 18) (quoting 42 U.S.C. § 113(f)(2)(B)) (concluding that Stratus is "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement.").

**B.     ANALYSIS**

1.     <u>Whether Contribution and Cost Recovery Claims May Be Brought Simultaneously</u>

The Supreme Court has made clear that Sections 107 and 113 provide "causes of action 'to persons in different procedural circumstances'" and that cost recovery under § 107(a) and contribution under § 113(f) are two "'clearly distinct' remedies." *Atlantic Research*, 551 U.S. at 138–39 (quoting *Cooper Industries,* 543 U.S. at 163 n.3). It has also settled that a PRP that reimburses another PRP's costs to satisfy a settlement agreement may pursue contribution under Section 113 but may not recover under Section 107(a). However, the Supreme Court has left open the question of what claims a PRP may bring where it has personally incurred response costs pursuant to an administrative settlement agreement, as opposed to reimbursing costs another party incurred pursuant to a settlement agreement. *Id.* at 139 n.6.[5] "Because the procedural requirements and the remedies for cost recovery and contribution claims are distinct, every federal court of appeals to have considered the question since *Atlantic Research* . . . has said that a party who *may* bring a contribution action for certain expenses *must* use the contribution action, even if a cost recovery action would

---

[5] As the Sixth Circuit explained:

> The best help that the Court has given us is to say that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." *Id.* at 139–40 n. 6, 127 S.Ct. 2331. Problems arise, as the Court foresaw, when PRPs do not voluntarily incur expenses or involuntarily reimburse another entity—the dichotomy upon which the Court's divide seems to operate.

*Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757, 766-67 (6th Cir. 2014) (footnote omitted).

otherwise be available."[6] This Court agrees.

First, concluding that a plaintiff who may proceed with a Section 113 claim[7] may only proceed with a Section 113 claim is consistent with the text and structure of the statute. "CERCLA must "be read as a whole," such that its remedies remain "clearly distinct." *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236 (11th Cir. 2012) (internal quotation marks omitted) (quoting *Atl. Research*, 551 U.S. at 135, 138). Congress intentionally amended CERCLA to include express rights to contribution through Section 113, and "'[w]hen Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect.'" *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013). To allow a qualifying contribution plaintiff to proceed under Section 107 would "abrogate the requirements Congress placed on contribution claims under" Section 113 and would render Section 113 superfluous. *Id.* at 205–06 (quoting *Niagara Mohawk,* 596 F.3d at 128). Therefore, under the canons of statutory construction, the

---

[6] *Whittaker Corp. v. United States*, 825 F.3d 1002, 1007 (9th Cir. 2016) (emphasis in original); *see, e.g.*, *Gov't of Guam*, 950 F.3d at 111 (holding Section 113(f)(3)(B) and Section 107 are mutually exclusive); *Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1117 (9th Cir. 2017) (emphasis in original) (collecting cases) ("Our circuit, and 'every federal court of appeals to have considered the question since *Atlantic Research*,' has concluded that 'a party who *may* bring a contribution action for certain expenses *must* use the contribution action [under § 113(f)(3)(B)], even if a cost recovery action [under § 107(a) ] would otherwise be available.'"); *Hobart*, 758 F.3d at 767 ("CERCLA's text and structure lead us to conclude that PRPs must proceed under § 113(f) [for contribution] if they meet one of that section's statutory triggers."); *Bernstein*, 733 F.3d at 206 ("we agree with our sister circuits that a plaintiff is limited to a contribution remedy when one is available"); *Solutia*, 672 F.3d at 1237 (same); *Morrison Enters. v. Dravo Corp.*, 638 F.3d at 603 (holding "that § 113(f) provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement"); *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 229 (3d Cir. 2010) (same); *Niagara Mohawk*, 596 F.3d at 124–28 ("In our view, only § 113(f)(3)(B) [contribution] provides the proper procedural mechanism for [the plaintiff's] claims.").

[7] Herein, and in the interest of brevity, the Court refers to a plaintiff that may bring a Section 113 claim as a "qualifying contribution plaintiff."

Court construes Section 113 as providing an exclusive remedy for a qualifying

contribution plaintiff. *See, e.g.*, *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d

757, 767 (6th Cir. 2014) ("There would be no reason to limit § 113(f)'s availability if

PRPs have § 107(a)(4)(B) as a fall-back option, and we generally do not interpret

congressional enactments to render certain parts of these enactments superfluous.");

*Bernstein*, 733 F.3d at 202 (emphasis in original) (collecting cases) ("To read [Section

113(f)(3)(B)] as affording the same remedy to one who has *not* resolved his liability [to

the United States or a State] would be nonsensical, and it would render the limiting

language superfluous. The Supreme Court has long insisted that result should be

avoided wherever possible.").[8] To hold otherwise and allow a party to an administrative

settlement to "simply repackage its § 113(f) claim for contribution as one for recovery

under § 107(a)" would completely undermine the structure of CERCLA remedies.

*Solutia*, 672 F.3d at 1236. If given the choice, a rational PRP would prefer to file an

action under Section 107 in every case, due to its longer statute of limitations, its

provision for strict liability, its limited defenses, and its opportunity for joint and several

recovery.[9] Accordingly, if a plaintiff that incurs costs pursuant to an administrative

settlement agreement were allowed to recover those costs pursuant to both Sections

---

[8] The Tenth Circuit applied the canon against superfluity in the CERCLA context in *United States v. Colorado & E. R. Co. ("CERC")*, 50 F.3d 1530, 1536 (10th Cir. 1995), reasoning that if PRPs were "allowed to recover expenditures incurred in cleanup and remediation from other PRPs under § 107's strict liability scheme, § 113(f) would be rendered meaningless." Although the Supreme Court has since clarified that PRPs may be able to assert Section 107 claims under certain circumstances, the same reasoning applied by the Tenth Circuit in *CERC* supports this Court's conclusion that Section 113 must be a qualifying contribution plaintiff's only avenue for relief if that provision is to have any effect.

[9] *Whittaker*, 825 F.3d at 1007 (first citing *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014); then citing *Solutia*, 672 F.3d at 1236–37).

107 and 113, Section 107 would swallow the more limited remedy of Section 113. *See*

*Atlantic Research*, 551 U.S. at 139 n.6.

Second, this conclusion is consistent with the Supreme Court's decision in

*Atlantic Research*, which states that "[t]he choice of remedies [between Section 113(f)

and 107(a)] simply does not exist." 551 U.S. at 139. Therein, the Supreme Court

explained that a PRP that reimburses costs paid by other parties to satisfy a settlement

agreement is "eligible to seek contribution under § 113(f)(1) . . . [but] cannot

simultaneously seek to recover the same expenses under § 107(a)," meaning that "the

PRP cannot choose the 6-year statute of limitations for cost-recovery actions over the

shorter limitations period for § 113(f) contribution claims." *Id.* This Court sees no logical

distinction between expenses reimbursed pursuant to an administrative settlement

agreement and expenses incurred first-hand pursuant to an administrative settlement

agreement.[10] Therefore, the Court reaches a conclusion analogous to that of the

Supreme Court in *Atlantic Research*—a PRP that incurs costs pursuant to an

administrative settlement agreement is eligible to seek contribution under Section 113

but may not simultaneously seek to recover the same expenses under Section 107.[11]

---

[10] Both kinds of costs are incurred after administrative intervention and pursuant to settlement agreements and are, therefore, both compelled costs. *Cf. Niagara Mohawk*, 596 F.3d at 127 (citing *Atlantic Research,* 551 U.S. at 135) (footnote omitted) ("Section 107(a) claims are brought by . . . PRPs who incur CERCLA clean up costs **without judicial or administrative intervention**").

[11] The Court notes that the Supreme Court in *Atlantic Research* affirmed the Eighth Circuit, and the Eighth Circuit noted below that viewing "§ 113 as a liable party's exclusive remedy" did not make sense where the PRP was foreclosed from using § 113 but may make sense where parties are allowed to seek contribution under § 113. *Atlantic Research Corp. v. United States*, 459 F.3d 827, 834–35 (8th Cir. 2006), *aff'd,* 551 U.S. 128 (2007). Consistent with that reasoning, the Eighth Circuit later held that "§ 113(f) provides the exclusive remedy for a liable

Objecting to the Recommendation's conclusion that a plaintiff may not assert claims under both Sections 107 and 113, Plaintiff asserts that Judge Wang failed to follow one decision out of the District of Colorado—*Mathews v. Dow Chem. Co.*, 947 F. Supp. 1517 (D. Colo. 1996)—and the Tenth Circuit's opinion in *Morrison Enters. v. McShares, Inc.,* 302 F.3d 1127, 1133 (10th Cir. 2002), both of which touched on the effect of an ILO/BFPP defense on a plaintiff's ability to bring a Section 107 claim.

Plaintiff cites to *Mathews* for the proposition that an ILO plaintiff is "not a PRP" and, consequently, can maintain claims under both Sections 107 and 113 at the motion to dismiss stage. (Doc. # 62 at 12.) The court in *Mathews* acknowledged the Tenth Circuit rule that PRPs may not pursue a Section 107 claim and concluded, in relevant part, that a plaintiff that adequately pleads an ILO defense may bring a Section 107 claim because it is not a PRP under the statute:

> The Thoro Defendants first contend that Plaintiffs are not entitled to bring CERCLA section 107 claims because Plaintiffs are potentially responsible parties ("PRPs"). Plaintiffs counter that dismissal of their CERCLA section 107 claims would be improper because they have properly pled an affirmative defense to PRP liability—the "innocent landowner" defense. The Court agrees with Plaintiffs.
>
> In the Tenth Circuit, PRPs may not pursue CERCLA section 107 actions and are limited to actions for contribution under CERCLA section 113. *United States v. Colorado & Eastern R.R.,* 50 F.3d 1530, 1534–35 (10th Cir.1995) ("*CERC*"). *CERC* does not address whether a party with a valid affirmative defense to PRP liability may bring a claim under CERCLA section 107. It seems evident, however, that such a party would be entitled to bring a CERCLA section 107 claim since the affirmative defense would absolve them of potential liability. As a result, the Court holds that a party with a valid affirmative defense to PRP liability is not limited to actions for contribution under CERCLA section 113 and may bring claims under CERCLA section 107.

party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107." *Morrison Enters. v. Dravo Corp.*, 638 F.3d at 603.

*Id.* at 1520.

First, the Court notes that *Mathews* bears no mention of a judicial or administrative settlement agreement entered into by the plaintiff. The effect of this kind settlement agreement on a plaintiff's CERLCA claims is the precise question before this Court. Instead, the *Mathews* court addressed the defendant's argument that the plaintiff's PRP status barred it from bringing a Section 107 claim. In addressing that issue, *Mathews* relied on a premise that was later overturned by the Supreme Court in *Atlantic Research*. In *Mathews*, the court explained the bright line rule that "[i]n the Tenth Circuit, PRPs may not pursue CERCLA section 107 actions . . . ." *Id.* at 1520. In *Atlantic Research*, which post-dated *Mathews* by 11 years, the Supreme Court held that PRPs **may** pursue Section 107 actions, thereby clarifying that a plaintiff's PRP status alone does not control what CERCLA claims they may bring. 551 U.S. at 131. Further, the *Mathews* court stated that "**[i]t seems evident** . . . that such a party would be entitled to bring a CERCLA section 107 claim since the affirmative defense would absolve them of potential liability," 947 F. Supp. at 1520 (emphasis added), but the court's analysis involved little discussion of the statutory text, which the Supreme Court demonstrated in *Atlantic Research* is key to understanding the distinct rights and remedies provided by CERCLA. Further, *Mathews*' conclusion that a plaintiff could bring CERCLA claims under **both** Section 107 and 113 is inconsistent with the Supreme Court's emphasis in *Atlantic Research* that "[t]he choice of remedies simply does not exist." 551 U.S. at 140. Lastly, the Court rejects Plaintiff's contention that *Mathews* is controlling. The opinion of one district court judge does not bind another. *Camreta v.*

*Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1085 (D. Colo. 2017) (same). For the foregoing reasons, the Court does not find *Mathews* persuasive and looks to post-*Atlantic Research* cases to guide its analysis.

Similarly, Plaintiff cites to *Morrison* for the proposition that a party entitled to an innocent landowner defense is "not a PRP" and that such a plaintiff could appropriately proceed under Section 107. (Doc. # 62 at 13.) In *Morrison*, the Tenth Circuit considered, in part, whether the plaintiff landowner and operator that asserted an ILO/BFPP defense could pursue a cost recovery claim under Section 107 or whether it must pursue a contribution claim under Section 113. 302 F.3d at 1133–34. In dicta, the court agreed with the plaintiff's contention that "a party that can show that it is entitled to one of the defenses under § [107](b) should be able to sue under § [107][a]". *Id.* at 1133. However, the court held that the plaintiff did not have a CERCLA defense to liability, it was therefore a PRP under the statute, and that "because Morrison is a PRP, it may not proceed with two independent suits under both §§ [107] and [113](f), but instead may only proceed with an action for contribution under § [113](f)." *Id.* at 1135.

Like *Mathews*, the Tenth Circuit's legal analysis in *Morrison* relied on an outdated interpretation of CERCLA that prohibited PRPs from bringing cost recovery claims

under Section 107 under any circumstances.[12] This proposition is no longer good law because *Atlantic Research* held that any person other than the United States, a State, or an Indian tribe—including PRPs—is able to bring a Section 107 claim. Further, the proposition that Plaintiff cites to *Morrison* for—i.e., that a party entitled to an ILO defense may proceed under Section 107—was stated in dicta and, therefore, is not precedential. However, even if such statements were binding on this Court, *Atlantic Research* has cast doubt on *Morrison*'s indication that the ILO defense divests a party of its PRP status, as the Supreme Court stated that innocent landowners are still PRPs for the purposes of Section 107(a), as discussed in more detail below. 551 U.S. at 136. This Court is not bound to apply Tenth Circuit precedent "when the Supreme Court issues an intervening decision that is 'contrary' to or 'invalidates [the Tenth Circuit's] previous analysis.'" *United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014) (citations omitted). For these reasons, the Court declines to follow *Morrison*.

   2.   Whether Plaintiff's Asserted ILO/BFPP Defense Impacts its PRP Status

   Stratus argues that it is not limited to an action for contribution under Section 113(f) and that it may maintain a Section 107 cost recovery claim because it asserts an ILO/BFPP defense, and, therefore, is not a PRP under Section 107(a)(1)-(4). (Doc. # 62 at 2–3.) However, the Court agrees with Judge Wang's conclusion that Plaintiff's asserted defenses are irrelevant to its ability to assert a Section 107 claim.

---

[12] *See Morrison Enters. v. McShares, Inc.*, 302 F.3d at 1133 ("the determination of whether Morrison may proceed under § [107(a)] depends on whether Morrison is or is not a PRP")*; see also Young v. United States*, 394 F.3d 858, 862–63 (10th Cir. 2005) (collecting cases) ("We . . . do not determine whether Plaintiffs are PRPs under § 107(a) and thus unable to assert a cost-recovery claim under the rule in this Circuit that a Plaintiff–PRP must proceed under the contribution provisions of CERCLA § 113(f) when the Plaintiff–PRP sues another PRP for response costs.").

First, the Court rejects Stratus's contention that a plaintiff with an ILO/BFPP

defense to liability is not a PRP under the statute. The Supreme Court explained in

*Atlantic Research* that CERCLA's definition of a PRP covers innocent owners of

property:

> [T]he statute defines PRPs so broadly as to sweep in virtually all persons likely to incur cleanup costs . . . . [E]ven parties not responsible for contamination may fall within the broad definitions of PRPs in §§ 107(a)(1)-(4). See 42 U.S.C. § 9607(a)(1) (listing "the owner and operator of a ... facility" as a PRP); see also *United States v. Alcan Aluminum Corp.,* 315 F.3d 179, 184 (C.A.2 2003) ("CERCLA § 9607 is a strict liability statute").

551 U.S. at 136. Therefore, current landowners such as Plaintiff who assert ILO and/or

BFPP defenses are still PRPs under CERCLA. Whether those landowners have

statutory defenses to liability is a separate question.

The Court also rejects Plaintiff's related contention that a qualifying contribution

plaintiff with an ILO/BFPP defense to CERCLA liability may maintain a cost recovery

claim by virtue of that defense. In *Cranbury Brick Yard, LLC v. United States*, 943 F.3d

701 (3d Cir. 2019), the Third Circuit affirmed the district court's conclusion below that

the plaintiff could not maintain a Section 107 claim because it had incurred clean-up

costs pursuant to an administrative settlement agreement with a state environmental

agency and, therefore, could assert a claim under Section 113. *Id.* at 709 ("Because the

amended Consent Order gave Cranbury Brick Yard immunity from contribution claims, it

barred Cranbury Brick Yard from seeking cost recovery from other potentially

responsible parties."). Thereafter, the court determined that the plaintiff's asserted

BFPP defense would have mattered only if the plaintiff could maintain a Section 107

claim; the court concluded that the plaintiff's alleged BFPP status was "irrelevant" to the

determination of whether the plaintiff could maintain a Section 107 claim in the first place. Thus, the court did not reach the merits of the alleged BFPP status on appeal. *Id.* at 713.

The Third Circuit's well-reasoned decision in *Cranbury Brick Yard* is persuasive. In this case, Plaintiff reached administrative settlements with the EPA and CDPHE, which resolved Plaintiff's liability to the agencies "for some or all of a response action or for some or all of the costs of such an action" within the meaning of Section 113. *See* 42 U.S.C. § 9613(f)(2). Plaintiff incurred its alleged clean-up costs pursuant to those Consent Orders. Thus, Plaintiff is limited to a Section 113 claim on that basis, and its belief that it qualifies as either an ILO and/or a BFPP "is inapposite to the inquiry of what remedy, in the first instance, is available to it." (Doc. # 55 at 16–17.)

3. Whether Plaintiff Has Pled a Section 107 Claim for Costs that Fall Outside of the Consent Orders

Lastly, Plaintiff attempts to revive its Section 107 claim by objecting to Judge Wang's conclusion that Plaintiff failed to state a claim for costs that predated, and thus were not incurred pursuant to, the Consent Orders. (Doc. # 62 at 14–15); *see Chevron Mining, Inc. v. United States*, No. 13-CV-00328 MCA-KK, 2015 WL 13650031, at *10 (D.N.M. Mar. 31, 2015) (dismissing the plaintiff's Section 107(a) claim only insofar as it sought to recover costs for "matters addressed" in the settlement agreements).

Plaintiff's argument is unavailing because Plaintiff repeatedly alleges in its complaint that **all** of its costs were incurred under the Consent Orders.[13] Plaintiff did not

---

[13] *See, e.g.*, (Doc. # 1 at 3) ("All of Stratus' actual and anticipated investigative costs, remedial costs and costs of long-term monitoring and maintenance . . . have been, or will be, incurred pursuant to the Consent orders . . . ."); (*id.* at 13) ("All of Stratus' actual and anticipated

distinguish the costs it broadly refers to in its Section 107 allegations from the costs it attributes to the Consent Orders.[14] Indeed, Stratus alleges that all $4 million in alleged damages are recoverable under its Section 113 claim. *Compare* (*id.* at 2) (stating that Stratus has incurred in excess of $4,000,000 in environmental response, remediation, and cleanup costs) *with* (*id.* at 19) (alleging as part of its claim for contribution under Section 113 that "Stratus has been compelled to incur and/or otherwise pay over $4,000,000.00 in response costs at the Neuhauser Landfill under AOC . . . ."). Accepting Plaintiff's allegations as true, and construing them in the light most favorable to Plaintiff, the Court finds that all alleged costs fall within Section 113. Therefore, Plaintiff fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" under Section 107. *Iqbal*, 556 U.S. at 678.

Further, the Court notes that, even if Plaintiff had sufficiently alleged some costs that predated the Consent Orders, "CERCLA 'response costs' are defined generally as the costs of investigating *and* remedying the effects of a release or threatened release of a hazardous substance into the environment." *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005) (emphasis in original) (quoting *Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1512 n.7 (10th Cir. 1991)). Accordingly, any pre-Consent Order costs Plaintiff incurred on "investigative and other work that was a reasonably necessary

---

'response' costs . . . were incurred pursuant to the Consent Orders . . . ."); (*id.* at 14) ("All response costs incurred, and to be incurred, by Stratus (including but not limited to all of Stratus' actions regarding preliminary assessment, site investigation, removal and remediation work, post-removal capping, monitoring and maintenance) are . . . consistent with the AOC and COC . . . .").

[14] *See, e.g.*, (*id.* at 17–18) (broadly alleging as part of Section 107 claim that "[a]s a result of the release and threatened release of hazardous substances at or from the Neuhauser Landfill, Stratus has incurred response costs and will continue to incur costs of "response" . . . .").

precursor to its more extensive remediation efforts under the AOC and COC," (Doc. # 1 at 13), would reasonably qualify as response costs under Section 113(f)(3)(B).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff's Objection to Recommendation of United States Magistrate Judge (ECF #55) and Request for Oral Argument (Doc. # 62) is OVERRULED, and Plaintiff's request for oral argument is DENIED;

- the March 24, 2020 Recommendation of United States Magistrate Judge (Doc. # 55) is AFFIRMED AND ADOPTED as an Order of this Court;

- Defendants' Motion to Dismiss Stratus's First Claim for Relief for CERCLA Cost Recovery Under Section 107(a) (Doc. # 28) is GRANTED;

- accordingly, Plaintiff's first claim for cost recovery pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), is hereby DISMISSED WITH PREJUDICE.

DATED:  September 9, 2020

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge