IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-02611-CMA-NYW

STRATUS REDTAIL RANCH LLC,

    Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
WWD LIMITED LIABILITY COMPANY, *a/k/a* WWD LLC, and
KAREN K PRATT-KRAMER, *f/k/a* Karen K. Landers,

    Defendants.

---

**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants Karen K Pratt-Kramer ("Kramer") and WWD Limited Liability Company's ("WWD") Motion for Summary Judgment (Doc. # 116) and Defendant International Business Machines Corporation's ("IBM") Motion for Partial Summary Judgment (Doc. # 139). For the following reasons, the Court denies both Motions.

## I.    BACKGROUND

This action concerns hazardous waste that was buried on a 290-acre parcel of land in Weld County, Colorado ("the Property"). Defendants Kramer and WWD are former owners of the Property, and Defendant IBM contracted to haul drums of hazardous waste from its Boulder facility to the Property in the late 1960s. Plaintiff Stratus Redtail Ranch LLC, the current owner of the Property, brought this action

pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.* Plaintiff seeks declaratory relief and contribution relating to the environmental cleanup costs, which Plaintiff estimates will exceed $8,700,000. (Doc. # 89 at ¶ 4.)

A.     FACTUAL BACKGROUND[1]

Until 2007, the Property was part of a larger 330-acre parcel of land ("Pratt Land"). (Doc. # 123 at 3, 8.) Harold Pratt owned the Pratt Land from 1950 until his death in 1969. (Doc. # 116 at 3.) In the mid-1960s, Harold Pratt entered into an agreement to lease the Property to landfill operator John Neuhauser and his company, Boulder Disposal (collectively, "Neuhauser"). (*Id.* at 4–5.) Neuhauser began hauling trash from the newly opened IBM facility in Boulder to the Property in 1966 or 1967. (Doc. # 123 at 3.) Neuhauser also hauled at least 1,000 55-gallon drums containing hazardous chemical waste from IBM and buried them in the south draw on the Property. (Doc. # 116 at 5.) Kramer and WWD contend that no hazardous waste was disposed of on the Property after 1968, *see* (Doc. # 116 at 5); however, Plaintiff and IBM assert that Neuhauser hauled the drums from May 1968 to May 1969, *see* (Doc. # 123 at 5; Doc. # 124 at 3.)

After Harold Pratt's death in 1969, the Property passed to his wife, Anna Pratt. (Doc. # 116 at 3.) Between 1976 and 1981, Anna Pratt conveyed the Property through a series of deeds to her adult children, Ken Pratt and Defendant Kramer. (*Id.*) During their ownership, Ken Pratt and Kramer leased the Property to a tenant farmer. (*Id.* at 6.) Ken

---

[1] Unless otherwise noted, the following facts are undisputed.

2

Pratt and Kramer also leased the Property to oil and gas operators beginning in the mid-1980s. (*Id.*) In addition, at some point before 1990, several small ponds were constructed on the Property to facilitate bird hunting for Ken Pratt. (*Id.*) The parties dispute whether Ken Pratt, Kramer, or any other person associated with WWD had any knowledge of the drums of hazardous waste that were disposed of on the Property during Harold Pratt's ownership.

In 1990, the Colorado Department of Health (now the Colorado Department of Public Health and Environment) ("CDPHE"), working with the United States Environmental Protection Agency ("EPA"), conducted a "preliminary assessment" of the Pratt Land in connection with reports that IBM hazardous waste had been disposed of in the vicinity. (Doc. # 139 at 4.) CDPHE's investigator, Austin Buckingham, interviewed Ken Pratt as part of the investigation. (*Id.* at 4–5.) Ken Pratt told Ms. Buckingham that his father, Harold Pratt, had an agreement with Neuhauser to dispose of IBM waste on the Pratt Land and that he did not recall any hazardous waste. (*Id.* at 5; Doc. # 142 at 5.) After inspecting the Pratt Land, Ms. Buckingham told Ken Pratt that she observed partially buried drums in the "south draw," which she documented in her notes. (Doc. # 123 at 6–7.) Ken Pratt also provided written consent for CDPHE and EPA to collect samples from the Pratt Land, including the Property. (*Id.*) Ms. Buckingham concluded in her report that the drums of IBM hazardous waste were located on the Old Erie Landfill, a closed landfill that was part of the Pratt Land and neighbors the Property. (Doc. # 142 at 6.)

On November 12, 1992, Ken Pratt and Kramer formed WWD. (Doc. # 124 at 6.) They quitclaimed the Pratt Land, including the Property, to WWD on November 16, 1992. (*Id.*) WWD's management company, the Pratt Partnership, retained Dave Stewart of Stewart Environmental Consultants to perform an environmental assessment of the Property. (Doc. # 142 at 6.) Stewart submitted a Phase II report to the Pratt Partnership on November 27, 1992 ("1992 Stewart Report"). (Doc. # 139 at 6.) The 1992 Stewart Report referenced "barrels" on the Property and recommended that they be removed. (*Id.*) The 1992 Stewart Report further concluded that the Property appeared to be in good condition from an environmental standpoint and that no storage of hazardous materials was observed. (Doc. # 142 at 6–7.)

Upon Ken Pratt's death in 1995, his interest in WWD passed to a trust managed by his wife, Susan Pratt. (Doc. # 116 at 3.) WWD's current members are Kramer and the Kenneth E. Pratt Living Trust represented by Susan Pratt. (*Id.*) WWD subsequently split the Pratt Land into two parcels: the Property at issue in this litigation and the 33-acre parcel that constitutes the Old Erie Landfill. (Doc. # 124 at 7.)

In 2015, WWD sold the Property to Plaintiff, which planned to use the Property for residential real estate development. (Doc. # 116 at 7.) Before acquiring the Property, Plaintiff engaged a consultant, QUEST, to conduct a Phase I Environmental Site Assessment. (Doc. # 124 at 8.) The QUEST report identified environmental concerns on the Property relating to its proximity to adjacent landfills. (Doc. # 143 at 12.) However, the QUEST report did not mention any observed on-site solid waste disposal or hazardous waste. (*Id.*)

In 2016, after receiving reports that drums of hazardous waste had been disposed of on the Property and reviewing soil vapor studies, CDPHE required Plaintiff to further investigate the Property. (Doc. # 139 at 8.) Thereafter, Plaintiff entered into an Administrative Settlement Agreement and Order on Consent for Removal Action ("AOC") with EPA and a Compliance Order on Consent ("COC") with CDPHE, under which Plaintiff would investigate and remediate the Property. (Doc. # 116 at 4.) Plaintiff excavated approximately 1145 drums from the Property, 12 of which were fully intact. (Doc. # 123 at 9.) The remainder of the drums had degraded enough that their contents leaked into the soil. (*Id.*)

**B.   PROCEDURAL BACKGROUND**

Kramer and WWD filed their Motion for Summary Judgment on all of Plaintiff's claims against them on May 10, 2021. (Doc. # 116). Plaintiff and IBM each filed responses in opposition, *see* (Doc. # 123) (Plaintiff); (Doc. # 124) (IBM), and Kramer and WWD followed with a consolidated Reply (Doc. # 138).

On August 31, 2021, IBM filed its Motion for Partial Summary Judgment requesting that the Court reject affirmative defenses asserted by Plaintiff and WWD. (Doc. # 129.) WWD filed a Brief in Opposition (Doc. # 142) and argues, in part, that IBM lacks standing to move for summary judgment against WWD. Plaintiff also filed a Response. (Doc. # 143). IBM submitted its Reply (Doc. # 149), and Plaintiff subsequently moved for leave to file a sur-reply on the basis that IBM had relied on new materials and argument in its Reply. The Court granted Plaintiff's request, and Plaintiff filed its Sur-reply (Doc. # 154).

## II. LEGAL STANDARDS

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply

rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. DISCUSSION

Kramer and WWD move for summary judgment on Plaintiff's claims against them on the basis that they are not liable parties under CERCLA because neither Kramer nor WWD owned the Property at the time the IBM drums were disposed of in the south draw. (Doc. # 139.) Plaintiff and IBM each oppose the Motion and argue that Kramer and WWD are liable because they knew or should have known that the drums were leaking chemical waste on the Property during their periods of ownership.

IBM also moves for partial summary judgment on Plaintiff's and WWD's affirmative defenses on the basis that Plaintiff and WWD each knew or had reason to know that the Property was contaminated before they acquired it. (Doc. # 139.) Plaintiff and WWD each oppose IBM's motion.

### A. APPLICABLE LAW

"Congress enacted CERCLA in 1980 to 'promote the timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 4

(2014) (quoting *Burlington N. & S.F.R. Co. v. United States*, 556 U.S. 599, 602 (2009)).

"The remedy that Congress felt it needed in CERCLA is sweeping: **everyone** who is potentially responsible for hazardous-waste contamination may be forced to contribute to the cost of cleanup." *Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1269 (10th Cir. 2017) (quoting *United States v. Bestfoods*, 524 U.S. 51, 56 n.1 (1998)). Section 107 of CERCLA imposes strict liability on four broad classes of potentially responsible parties ("PRPs"), three of which are relevant to this action:

> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, [and]
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . .

42 U.S.C. § 9607(a).

As enacted in 1980, CERCLA made no express provision for parties to seek contribution from other parties liable under its section 107 liability scheme. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 162 (2004). Congress addressed this gap in the statutory scheme when it subsequently amended CERCLA in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. 99–499, 100 Stat. 1613, to provide an express cause of action for contribution. *Id.*; *see* 42 U.S.C. § 9613 ("section 13"). Relevant to this case, section 13(f)(3)(B) grants a right of contribution to "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or

judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B); *see Cooper Indus., Inc.*, 543 U.S. at 163. Such a person may file suit for contribution from other PRPs.

CERCLA provides a few narrow affirmative defenses that a PRP may assert to avoid liability. *See PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 168 (4th Cir. 2013) (citing 42 U.S.C. § 9607(b)). To assert an innocent landowner ("ILO") defense under CERCLA, a landowner must prove several elements, including "that another party was the sole cause of the release of hazardous substances and the damages caused thereby" and "that the [landowner] exercised due care and guarded against the foreseeable acts or omissions of the responsible party." *Id.* at 179 (internal quotation marks and citation omitted); *see* 42 U.S.C. § 9607(b)(3). Thus, the landowner must prove that at the time it acquired the facility, it "did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility." 42 U.S.C. § 9601(35)(A)(i). To establish that it had "no reason to know" of the hazardous substance, the landowner must demonstrate that on or before it acquired the facility, it "carried out all appropriate inquiries ("AAI") into the previous ownership and uses of the facility in accordance with generally accepted good commercial and customary standards and practices." 42 U.S.C. § 9601(35)(B)(i).

CERCLA also contains a "bona fide potential purchaser" ("BFPP") exemption from liability for persons that would otherwise be PRPs as current owners or operators of a property. 42 U.S.C. §§ 9601(40)(A)-(H), 9607(r)(1). "To qualify for the BFPP exemption, a current owner must have acquired the facility after January 11, 2002, must

not impede the performance of a response action or natural resource restoration at the facility, and must establish eight criteria by a preponderance of the evidence." *PCS Nitrogen Inc.*, 714 F.3d at 179–80 (internal quotation marks omitted). One of those criteria is that a current owner must prove that it carried out AAI. *See* 42 U.S.C. § 9601(40)(B)(ii). Thus, establishing completion of AAI is critical for both an ILO and BFPP defense.

AAI is defined differently depending on the date that a property was acquired. For acquisitions before May 31, 1997, such as WWD's acquisition of the Property, the Court must consider (1) any specialized knowledge or experience on the part of the landowner; (2) the relationship of the purchase price to the value of the property, if the property was not contaminated; (3) commonly known or reasonably ascertainable information about the property; (4) the obviousness of the presence or likely presence of contamination at the property; and (5) the ability of the landowner to detect the contamination by appropriate inspection. 42 U.S.C. § 9601(35)(B)(iv)(I). For acquisitions after May 31, 1997, which includes Plaintiff's acquisition of the Property, the Court considers the landowner's compliance with EPA's AAI standard, published at 40 C.F.R. § 312 ("Part 312"). *See* 42 U.S.C. § 9601(35)(B)(ii).

## B.     KRAMER AND WWD'S MOTION FOR SUMMARY JUDGMENT

Kramer and WWD move for summary judgment on all of Plaintiff's asserted claims against them on the basis that Kramer and WWD are not PRPs because no hazardous waste was "disposed of" on the Property during their respective periods of ownership.

The second category of PRPs subject to liability under CERCLA encompasses "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). CERCLA defines "disposal" as

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42. U.S.C. § 9601(29) (incorporating definition of "disposal" from the Solid Waste Disposal Act, 42 U.S.C. § 6903(3)).

"The dispersal of contaminants need not reach a particular threshold level in order to constitute a 'disposal.'" *United States v. CDMG Realty Co.*, 96 F.3d 706, 619 (3d Cir. 1996). Further, courts have observed that the definition of disposal is not limited to a one-time occurrence, but that multiple "disposals" may occur over time. *See Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1573 (5th Cir. 1988) (acknowledging that "there may be other disposals when hazardous materials are moved, dispersed, or released during landfill excavations and fillings"). Thus, subsequent landowners and developers who engage in construction or other earth moving activities may be liable for "disposal" under CERCLA "notwithstanding the fact that they did not introduce the hazardous substances into the environment in the first place." *Lincoln Props., Ltd. v. Higgins*, 823 F. Supp. 1528, 1536 (E.D. Cal. Dec. 21, 1991); *see Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1342 (9th Cir. 1992) (concluding that allegations that a party "excavated the tainted soil,

11

moved it away from the excavation site, and spread it over uncontaminated portions of the property" were sufficient to allege a "disposal" under CERCLA).

In the instant case, the parties dispute whether the terms "leaking" and "spilling" in CERCLA's statutory definition of "disposal" encompass the passive leaking of barrels over time, or whether such disposal requires "active human conduct." The parties correctly observe that the law on this issue is unsettled: Several circuit courts have disagreed on whether passive leaking qualifies as "disposal," although their opinions "depend[] in large part on the factual circumstances of the case."[2] *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 875 (9th Cir. 2001) (noting that "circuit courts have taken a variety of approaches" that "cannot be shoehorned into the dichotomy of a classic circuit split" in determining whether disposal includes passive soil migration). The Tenth Circuit has not yet weighed in on the issue.

Kramer and WWD argue that they do not qualify as PRPs under CERCLA because the passive migration of contaminants from buried, degrading drums—of which they assert they had no knowledge—is not "disposal" under CERCLA. Further, Kramer and WWD dispute that any additional "disposals" occurred during their ownership periods in the form of earthmoving or other human activity that disturbed or spread contaminated soil. (Doc. # 138 at 6). Plaintiff and IBM each argue that several active "disposals" occurred during Kramer and WWD's ownership periods, including

---

[2] For example, the Sixth Circuit explicitly requires active human conduct in order for leaking to qualify as a "disposal." See *United States v. 150 Acres of Land*, 204 F.3d 698, 706 (6th Cir. 2000) (concluding that absent "any evidence that there was human activity involved in whatever movement of hazardous substances occurred on the property," there is no "disposal"). Conversely, the Fourth Circuit held that "disposal" includes passive migration in the context of leaking underground storage tanks. See *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 846 (4th Cir. 1991).

earthmoving connected with the construction of the bird-hunting ponds, oil drilling, and use of heavy farm machinery. *See* (Doc. # 123 at 12; Doc. # 124 at 11.) Further, Plaintiff and IBM urge the Court to decide that passive leaking of barrels is a "disposal" under CERCLA. (Doc. # 123 at 15; Doc. # 124 at 14.)

Upon consideration of the Motion, the related briefing, and the applicable law, the Court finds that there are genuine disputes of material fact that preclude summary judgment and would make it inappropriate to decide this issue of first impression at this stage of the litigation. These disputes of material fact include, but are not limited to:

- whether the construction of ponds on the Property to facilitate bird hunting for Ken Pratt disturbed soil containing hazardous substances during Kramer's ownership;
- whether any drilling or other activities occurred that disturbed contaminated soil or otherwise spread the contamination when the Property was leased to oil and gas developers during Kramer's and WWD's respective periods of ownership;
- whether, when Ken Pratt and Kramer leased the Property for farming, the farmer used heavy equipment or otherwise disturbed contaminated soil;
- whether landfilling occurred during either Kramer or WWD's period of ownership that involved earthmoving of contaminated soil; and
- whether Kramer or WWD had actual knowledge that drums of chemical waste were located on the Property and decaying or otherwise leaking.

In view of these factual questions, the Court finds that summary judgment is not appropriate and therefore denies Kramer and WWD's Motion (Doc. # 116).

**C.     IBM'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

In its Motion for Partial Summary Judgment (Doc. # 139), IBM requests that the Court preclude Plaintiff from asserting an ILO or BFPP defense and WWD from asserting an ILO defense because both parties failed to complete AAI and knew or should have known that the Property was contaminated before they acquired it. In response, WWD argues that IBM, a co-Defendant with WWD, lacks standing to move for summary judgment on WWD's affirmative defense. (Doc. # 142 at 10.) Further, WWD argues that, at minimum, material issues of fact preclude summary judgment on its ILO defense and that it adequately completed AAI prior to acquiring the Property. Similarly, Plaintiff argues that it appropriately conducted AAI and had no reason to know of the hazardous waste before it acquired the Property in 2015. (Doc. # 143.)

1.     WWD's ILO Defense

First, the Court will address WWD's argument that IBM lacks standing to move for partial summary judgment on WWD's ILO defense.

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." If the movant shows that there is no genuine dispute as to any material fact, "the movant is entitled to judgment as a matter of law" and the court "shall grant summary judgment." Fed. R. Civ. P. 56(a). The question raised by the instant motion is whether a co-defendant may move for summary judgment to preclude another co-defendant's affirmative defense when no crossclaims exist between those defendants. The parties provide no authority directly on point.

The Court agrees with WWD that IBM's motion for summary judgment on WWD's affirmative defense against Plaintiff's claims is procedurally improper. Because no claims exist between WWD and IBM, there are no claims or defenses for which IBM would be "entitled to judgment" as to WWD. Accordingly, IBM is not a "party" pursuant to Rule 56 that may move for summary judgment against WWD. *See Li v. Lewis*, No. 1:20-CV-12 TS-PMW, 2020 WL 2514089, at *2 (D. Utah May 15, 2020) (rejecting a counterclaim defendant's motion for summary judgment on a claim to which it was not a party on the basis that the motion was procedurally improper).

The Court rejects IBM's argument that it has "standing" to move for summary judgment on WWD's ILO defense because IBM has an interest in the outcome: IBM argues that its allocation of the cleanup cost will be affected by whether or not WWD successfully asserts an ILO defense. IBM's interest in the success of WWD's ILO defense is not enough to overcome the procedural deficiency of there being no "claims or defenses" between IBM and WWD for which the Court could enter judgment.[3]

Further, the cases cited by IBM are inapposite. Those cases raise the scenario of whether a co-defendant may **oppose** another co-defendant's motion for summary judgment when no crossclaims exist between the defendants, but the opposing co-

---

[3] Several courts have found that a defendant lacks standing to move for dismissal or summary judgment on claims to which it is not a party. *See United States ex rel. Hindin v. N.Y. Lutheran Med. Ctr.*, No. 00-CV-7499 (FB)(JMA), 2009 WL 366490, at *1 (E.D.N.Y. Feb. 13, 2009) (holding that a movant no longer named in the amended complaint "is not a 'party against whom relief is sought'" and therefore "has no standing to move for summary judgment"); *Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366(FM), 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) (holding that defendant not named in several counts of a complaint had no standing to move to dismiss those counts); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, No. Civ. 91-188-SLR, 1994 WL 796603, at *7 n.5 (D. Del. Dec. 8, 1994) (defendant not named in a count of the complaint "has no standing to move for its dismissal or summary judgment on the count").

defendant could be aggrieved by the outcome of the decision. *See Trantham v. Super T. Transp., Inc.*, 311 F. Supp. 3d 1247, 1251 (D. Colo. 2018) (declining to consider a co-defendant's response to another co-defendant's motion for summary judgment where no crossclaims existed because the opposing defendants would not be "adversely affected" if the motion were granted); *Wood v. Millar*, No. CIV 13-0923 RB/CG, 2015 WL 12661926, at *4 (D.N.M. Feb. 19, 2015) ("[T]he better rule allows defendants to oppose motions for summary judgment if they could be aggrieved by the outcome of the decision."). These cases are distinguishable because the underlying summary judgment motions nevertheless addressed a claim or defense for which "the movant was entitled to judgment."[4] There is no judgment to which IBM is entitled on WWD's ILO defense.

Accordingly, the Court denies IBM's Motion for Partial Summary Judgment (Doc. # 139) to the extent it seeks summary judgment on WWD's ILO affirmative defense.

2.  Plaintiff's ILO and BFPP Defenses

Next, IBM argues that Plaintiff does not qualify for the ILO or BFPP defense because Plaintiff did not complete AAI prior to acquiring the Property in 2015 and Plaintiff knew or had reason to know of hazardous waste on the Property. (Doc. # 139 at 16.) Specifically, IBM argues: (1) Quest's site visit was deficient; (2) Quest failed to inspect local and federal records; and (3) Quest failed to conduct additional inquiries to

---

[4] Although neither party addresses it, this precise scenario occurred in the instant case. Co-defendant IBM filed a Response (Doc. # 124) to co-defendants Kramer and WWD's Motion for Summary Judgment on all claims asserted against them in **Plaintiff's** Amended Complaint (Doc. # 116). Because IBM could be adversely affected by the outcome of Kramer and WWD's Motion for Summary Judgment, its response in opposition was proper. *See, e.g., Wood*, 2015 WL 12661926, at *4.

"identify conditions indicative of releases or threatened releases" of hazardous substances.

Part 312 requires that in carrying out AAI, an environmental professional must complete a "visual on-site inspection of the subject property . . . including a visual inspection of the areas where hazardous substances may be or may have been used, stored, treated, handled, or disposed." 40 C.F.R. § 312.27(a)(1). Part 312 also specifies that "[f]ederal, tribal, state, and local government records or data bases of government records of the subject property and adjoining properties must be reviewed." 40 C.F.R. § 312.26(a). Parties seeking to prove an ILO or BFPP defense must also establish that they completed applicable "additional inquiries." *See* 40 C.F.R. § 312.1(c)(1). As such, the party must conduct inquiries that "take into account" their "specialized knowledge or experience," 40 C.F.R. § 312.28, and "commonly known or reasonably ascertainable information" about the subject property, 40 C.F.R. § 312.30. In addition, the party must "take into account the information collected" through conducting AAI "considering the degree of obviousness of the presence of releases or threatened releases at the subject property." 40 C.F.R. § 312.31.

Upon consideration of IBM's Motion for Partial Summary Judgment (Doc. # 139), the related briefing, all exhibits attached thereto, and the applicable law, the Court finds that there are several genuine disputes of material fact that preclude summary judgment on Plaintiff's ILO and BFPP defenses, including, but not limited to:

- whether Quest failed to visit and visually inspect areas of the Property where Quest had reason to know that hazardous materials may have been disposed of;

17

- whether Quest adequately reviewed local and federal records;
- whether there was any "degree of obviousness of the presence of release or threatened release" of hazardous materials at the Property, including the presence and location of any visible drums; and
- whether Quest and Plaintiff had "reason to know" of a release or threatened release of hazardous substances at the property on the basis of the information it acquired through seeking to conduct AAI.

In view of these factual questions, the Court finds that summary judgment on Plaintiff's ILO defense and BFPP defense is inappropriate.

## IV.　CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- Defendants Kramer and WWD's Motion for Summary Judgment (Doc. # 116) is DENIED, and
- Defendant IBM's Motion for Partial Summary Judgment (Doc. # 139) is DENIED.

DATED:　January 18, 2022

BY THE COURT:

*Christine M. Arguello*
CHRISTINE M. ARGUELLO
United States District Judge