IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-02611-CMA-NYW

STRATUS REDTAIL RANCH LLC,

    Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
WWD LIMITED LIABILITY COMPANY, *a/k/a* WWD, LLC, and
KAREN K PRATT-KRAMER, *f/k/a* Karen K. Landers,

    Defendants.

**ORDER GRANTING PLAINTIFF'S RULE 702 MOTION TO PRECLUDE DEFENDANT IBM'S EXPERT WILL KEMPER ESQ. FROM TESTIFYING AT TRIAL AND STRIKING HIS REPORT**

This matter is before the Court on Plaintiff's Motion to Preclude Defendant IBM's Expert Kemper Will Esq. From Testifying at Trial and Striking His Report ("Motion") (Doc. # 157), which Defendants WWD Limited Liability Company ("WWD") and Karen K. Kramer ("Kramer") join. (Doc. # 158.) For the following reasons, the Court grants the Motion.[1]

---

[1] Defendant IBM requests a hearing on the Motion (Doc. # 164); however, the Court finds that a hearing is not necessary under the circumstances. *See United States v. Nacchio*, 555 F.3d 1234, 1252 (10th Cir. 2009) (observing that the Tenth Circuit does not require a district court to hold a 702 hearing).

## I.     BACKGROUND

The Court provided a detailed recitation of the factual and procedural background of this case in its January 18, 2022 Order Denying Defendants' Motions for Summary Judgment. (Doc. # 156.) Therefore, the Court incorporates that summary and recounts only the facts necessary to address the Motion.

This is an action for contribution for remediating hazardous waste on a 290-acre parcel of land in Weld County, Colorado ("the Property"). (*Id.* at 1.) Plaintiff Stratus Redtail Ranch LLC, the current owner of the Property, filed this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.* Plaintiff seeks declaratory relief and contribution from Defendant International Business Machines Corporation ("IBM"), which contracted to haul drums of hazardous chemical waste from IBM to the Property in the 1960s, and Defendants WWD and Kramer, the previous owners of the Property.

The Court denied Defendants WWD and Kramer's Motion for Summary Judgment (Doc. # 116) and Defendant IBM's Motion for Partial Summary Judgment (Doc. # 139) on January 18, 2022. (Doc. # 156.) With respect to WWD and Kramer's motion, the Court determined that several genuine issues of material fact precluded summary judgment in favor of WWD and Kramer on their argument that they are not potentially responsible parties ("PRPs") under CERCLA on the basis that no hazardous waste was "disposed of" on the Property during their respective periods of ownership. (*Id.* at 10–13.) Regarding IBM's motion, the Court concluded that IBM lacked standing to move for summary judgment against co-Defendant WWD on WWD's innocent

landowner ("ILO") defense. (*Id.* at 14–16.) Further, the Court determined that genuine issues of material fact precluded summary judgment against Plaintiff on Plaintiff's ILO and bona fide potential purchaser ("BFPP") defenses. (*Id.* at 16–18.) All of these disputed factual issues, and the ultimate question of allocation, will be addressed at a bench trial set to begin July 11, 2022. (Doc. # 155.)

Plaintiff filed the Motion seeking to preclude IBM's expert witness, J. Kemper Will, Esq., on April 1, 2022. (Doc. # 157.) WWD and Kramer joined the Motion on April 19, 2022. (Doc. # 158.) IBM filed its Response on April 29, 2022 (Doc. # 161), and Plaintiff followed with its Reply (Doc. # 165).

## II.      LEGAL STANDARD

A district court must act as "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 594–95 (1993). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). The Court has discretion to evaluate whether an expert is helpful, qualified, and reliable under Federal Rule of Evidence 702. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In deciding whether expert testimony is admissible, the Court must make multiple determinations. First, it must determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241 (quoting Fed. R. Evid. 702). Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand" such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (internal quotation marks omitted). Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris*, 397 F.3d at 884 (alteration in original) (quoting *Daubert*, 509 U.S. at 592). In determining reliability, a district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert*, 509 U.S. at 592–93).

### III. DISCUSSION

### A. ALLOCATION OPINION

Mr. Will has been an environmental lawyer for over 45 years, has served as a mediator and arbitrator in allocation disputes, and is experienced with Superfund matters and matters involving landfills. (Doc. # 157-1 at 3.) The stated purpose of his report is "to assist the District Court in assessing factors relevant to allocation of responsibility among the parties . . . for past and future costs related to environmental conditions" at the Property. (*Id.* at 1.) Section III of the report details his methodology:

> To prepare these opinions, I have employed the following methodology. Numerous relevant exhibits and other documents were gathered and reviewed to determine the landfill history, circumstances, and potential liabilities. A list of the documents reviewed in this allocation review is attached as Exhibit B. Relevant statutory, regulatory, and case precedents were reviewed. Based on my experiences from many allocation matters, on my review of and familiarity with relevant law and precedents, on my long work with Superfund and environmental remediation matters, and the totality of site circumstances at the Neuhauser Landfill, I finally derived the allocation opinions stated in this report.

(*Id.* at 3.)

In Section V, Potential CERCLA Liability as Basis for Allocation, Mr. Will acknowledges that "[i]t is the Court's prerogative to decide liability among the parties." (*Id.* at 9.) In order to provide an opinion about how this liability should be allocated, Mr. Will makes several assumptions regarding potential CERCLA liability. (*Id.*) He then analyzes and applies the equitable factors he considered most appropriate to the circumstances of this case. (*Id.* at 11–16.) In the final section of the report, titled Recommendation for Allocation of Responsibility for Neuhauser Landfill, Mr. Will provides an allocation recommendation as to what percentage share of liability should

5

be assigned to each responsible party or entity. (*Id.* at 17.) He states that he arrived at this recommendation "based on the specific circumstances of the Neuhauser Landfill, on the most significant factors listed above, on my experience with equitable allocation at numerous CERCLA sites, and on the body of CERCLA allocation caselaw." (*Id.*)

**B.   ANALYSIS**

Plaintiff, WWD, and Kramer (collectively, "Movants") raise no arguments relating to Mr. Will's qualifications. (Doc. # 165 at 2.) Instead, Movants argue that Mr. Will should be precluded from testifying because he offers improper legal opinions that would not be helpful to the Court. (Doc. # 157 at 14; Doc. # 158 at 1.) Specifically, Movants contend that Mr. Will's opinion as a "CERCLA allocation expert" as to how to weigh the CERCLA equitable allocation factors interferes with the judge's role, borders on attorney advocacy, and constitutes an impermissible expert lawyer opinion on the ultimate legal conclusion to be reached by the Court. (Doc. # 165 at 3.) The Court agrees with Movants.

"CERCLA's allocation scheme 'is an equitable determination, in which the district court must make its own factual findings and legal conclusions.'" *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 938 (8th Cir. 1995) (quoting *Gopher Oil Co. v. Union Oil Co.*, 955 F.2d 519, 526 (8th Cir. 1992)). The statute provides that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Courts often use the so-called "Gore" or "Torres" factors in CERCLA contribution cases to allocate response costs among liable parties. *See United States v. Colo. & E. R.R.*

*Co.*, 50 F.3d 1530, 1536 n.5 (10th Cir. 1995) (noting that many courts look to the Gore factors to apportion contribution claims and emphasizing that the Gore factors are "neither an exhaustive nor exclusive list"); *Environ. Transp. Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503, 508 (7th Cir. 1992) (describing the six Gore factors as equitable factors that may be considered in resolving apportionment for CERCLA contribution cases).

With regard to expert legal testimony, it is well settled that experts are not permitted to testify as to the applicable law or legal standards. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1150 (10th Cir. 2009). Further, "[a]n expert may not state legal conclusions drawn by applying the law to the facts." *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (alteration in original) (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008)); *see also Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts."). "Where the ultimate issue is a question of law, the opinion of a legal expert, even a lawyer, interferes with the judge's role as 'sole arbiter of the law' and should not be allowed." *Wollan v. U.S. Dep't of Interior, Bureau of Land Mgmt.*, 997 F. Supp. 1397, 1403 (D. Colo. 1998) (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988)). Finally, "[e]xpert opinion on ultimate issues are generally inadmissible under the Federal Rules of Evidence." *Id.*

The parties dispute whether an expert is permitted to offer an opinion as to how the Court should weigh the CERCLA equitable allocation factors and apportion liability.

In support of Mr. Will's testimony, IBM argues that "courts routinely admit the testimony of qualified CERCLA allocation experts" where the testimony is relevant and reliable. (Doc. # 161 at 2.) For their part, Movants contend that experts cannot offer an opinion weighing the equitable factors and that most courts have excluded similar testimony because it interferes with the judge's role and provides an impermissible opinion on the ultimate issue of a CERCLA contribution case. *See* (Doc. # 165 at 3–4.) Movants note that Courts typically distinguish between two categories of allocation expert opinions: opinions based on scientific or technical expertise, which are generally admissible, and opinions based on a witness's subjective evaluation of equitable factors and case law, which are inadmissible. (Doc. # 158 at 1–2.) Movants contend that Mr. Will's testimony falls into the latter impermissible category. (*Id.* at 2.)

The Court agrees with Movants that Mr. Will's testimony is inadmissible because it constitutes improper expert legal testimony and will not be helpful to the Court in making its ultimate allocation decision. In CERCLA cases, Courts typically do not allow experts to opine as to the applicable equitable factors or how the court should render allocation based on those factors. *See Chitayat v. Vanderbilt Assocs.*, No. 03-5314 (DRH) (MLO), 2007 WL 2890248, at *6 (E.D.N.Y. Sept. 27, 2007) (precluding an expert's allocation testimony because "[the expert's] proposed testimony as to cost allocation based on the Gore factors violates the precept precluding an expert from stating ultimate legal conclusions based upon facts"); *Am. Special Risk Ins. Co. v. City of Centerline*, No. 97-CV-728974-DT, 2002 WL 1480821, at *10 (E.D. Mich. June 24, 2002) (excluding expert allocation testimony because the testimony "does not 'aid' the

8

Court in understanding the facts; rather [the expert's] testimony attempts to persuade the Court, as it is the attorneys' jobs to do, how it should allocate costs in this case. [The expert's] testimony does nothing more than tell the Court what to do"). The Court finds that Mr. Will's testimony would not be helpful because his report merely assumes the Court's role of weighing the equitable factors and arriving at an allocation "recommendation." *See New York v. Westwood-Squibb Pharm. Co.*, 90-CV-1324C, 2011 U.S. Dist. LEXIS 11765, at *18 (W.D.N.Y. June 23, 2001) ("While an expert's testimony should assist the court in understanding or determining a fact in issue, it should not seek to relieve the court of its duty to find facts and reach conclusions of law.").

While IBM is correct that courts do sometimes admit CERCLA allocation expert testimony, the Court finds that those cases are distinguishable because the experts' testimony was grounded in scientific or technical methods to quantify contribution.[2] For example, experts may provide scientific models to mathematically determine the relative contribution of waste to a specific site in a CERCLA contribution case. *See Chitayat*, 2007 WL 2890248, at *3 (permitting an expert geologist to testify as to two groundwater models to assist in estimating the spatial distribution and concentrations of contaminations over time for determining CERCLA contribution and allocation of liability, but excluding the expert's analysis of the equitable Gore factors); *see also New York v.*

---

[2] IBM cites to *Northern States Power Co. v. City of Ashland, Wis.*, No. 12-cv-602-bbc, 2015 WL 1745880, at *5 (W.D. Wis. Apr. 16, 2015), for the proposition that courts "routinely admit the testimony of allocation experts in CERCLA contribution cases." In *Northern States*, the court acknowledged that allocation experts may provide "allocation formulas" or other models for assessing data to assist in deciding how to allocate costs. *Id.* Nevertheless, the court excluded the expert's opinion with respect to his "recitation or explanation of the law." *Id.*

*Solvent Chem. Co.*, 685 F. Supp. 2d 357, 443 (W.D.N.Y. 2010) (relying on expert testimony in determining equitable allocation where the expert provided a methodology that "separately addresse[d] each component of the remediation by examining the sources of the contaminants detected within each particular media"). In the instant case, Mr. Will offers no such scientific or technical methodology for apportioning liability; rather, Mr. Will offers an allocation recommendation by merely reviewing the facts, historical documents, and exhibits and applying the equitable factors based on his own past experience. Such an opinion will not aid the Court in undertaking the very same analysis. *See, e.g.*, *Westwood-Squibb*, 2011 U.S. Dist. LEXIS 11765, at *20 (excluding opinions of attorney who was "not an engineer or a chemist who could tell the court when certain contaminants were put into the ground or what amounts of different contaminates [were] attributable to the parties" but rather intended to "tell the court how to interpret [technical experts'] opinions and how to weigh that evidence in light of certain equitable factors").

Finally, IBM argues that because Mr. Will would testify at a bench trial, it is more appropriate for the Court to admit his testimony "with the understanding the testimony can be given only the weight that it deserves, or excluded in whole or part after trial as necessary." (Doc. # 161 at 17) (quoting *MPM Silicones, LLC v. Union Carbide Corp.*, No. 1:11-CV-1542 (BKS/ATB), 2016 WL 11604974, at *3 (N.D.N.Y. July 7, 2016)). Although there is no risk of a legal expert unduly influencing a jury, the Court nevertheless finds that Mr. Will's testimony would not be helpful and that it constitutes impermissible legal conclusions. Further, should Mr. Will testify, Plaintiff will offer its own

10

"allocation expert" to testify as to how to apply the equitable factors and apportion liability.[3] *See* (Doc. # 157 at 4.) Given that all parties are represented by counsel who are fully capable of making arguments relating to allocation, the Court sees no need for two "expert lawyers" to provide testimony applying the law to the facts and advising the Court on the ultimate issue of how to allocate costs. *See Specht*, 853 F.2d at 809 ("[T]estimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process. If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same."); *see also Westwood-Squibb*, 2001 U.S. Dist. LEXIS 11765, at *31–32 ("[A]lthough Rule 702 need not be applied as strictly when the court is the trier of fact, the relaxation of the standard of admissibility does not mean that the court should devote its time and resources, as well as those of the opposing party, to a witness whose testimony might be presented with equal effect through pre-trial and post-trial briefs."). Because Mr. Will's testimony constitutes inadmissible legal opinions and would not be helpful to the Court, he is precluded from testifying at trial.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

---

[3] Plaintiff's allocation expert, Alan Gilbert, Esq., passed away in March 2022. (Doc. # 157 at 1.) Plaintiff and IBM have agreed that should the Court permit Mr. Will to testify, Plaintiff may (1) admit Mr. Gilbert's report into evidence and use it for cross-examination, or (2) retain a new legal expert and disclose a new/alternative rebuttal report and have such legal expert testify at trial. (*Id.* at 2 n.1.) Plaintiff will voluntarily withdraw the Gilbert Report if the Court precludes Mr. Will from testifying. (*Id.* at 4.)

- Plaintiff's Rule 702 Motion to Preclude Defendant IBM's Expert Kemper Will Esq. From Testifying at Trial and Striking His Report (Doc. # 157) is GRANTED; and

- Defendant IBM's Motion for a Hearing on Stratus's Rule 702 Motion (Doc. # 164) is DENIED.

DATED: June 14, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge